

**U.S. DEPARTMENT OF JUSTICE**
*United States Attorney*
*District of New Jersey*

---

*Megan Linares*
*Assistant United States Attorney*

*970 Broad Street, Suite 700*
*Newark, New Jersey 07102*

*973-645-2700*
*megan.linares@usdoj.gov*

March 24, 2025

**VIA E-MAIL & ECF NO.**

The Honorable Claire C. Cecchi, U.S.D.J.
United States District Court
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07102

   Re: *U.S. v. Christopher James Scanlon*, Crim. *No. 24-682*

Dear Judge Cecchi:

  This Court should deny Defendant Christopher James Scanlon's motion to dismiss the indictment for three reasons. ECF No. 61 ("Mot."). First, Scanlon's Speedy Trial Act claim fails because the 70-day clock has not lapsed due to tolling, and the Government requests that the Court hold a hearing to resolve the contested pre-trial continuance motion as soon as practicable. Second, based on the U.S. Supreme Court's four-factor test in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), there has been no Sixth Amendment violation of Scanlon's right to a speedy trial. And third, there has been no unnecessary delay in bringing Scanlon to trial pursuant to Fed. R. Crim. P. 48(b).

## PROCEDURAL HISTORY

  On April 20, 2023, Scanlon was charged by complaint for conspiracy to control and own an unlicensed money transmitting business, contrary to 18 U.S.C. § 1960(a), in violation of 18 U.S.C. § 371. ECF No. 1. *See* Mag. No. 23-10168. Because Scanlon was overseas, the complaint was kept under seal until he could be arrested upon his entry into the country. *See id.; see also* ECF No. 3. On May 25, 2023, Scanlon was arrested at the Miami airport after traveling to the United States. ECF. No. 2. The arrest was not unexpected: The Government had informed Scanlon's counsel that Scanlon was a subject in late 2020, and a target by late 2021.

A. Scanlon Has Not Been Detained; He is Permitted Limited Travel and the Opportunity to Conduct Certain Business.

Scanlon appeared before the Hon. Alicia M. Otazo-Reyes, U.S.M.J., in the Southern District of Florida the next day and was released on a $5,000,000 appearance bond with 20% secured, home confinement with GPS monitoring and other restrictions, including a prohibition from using connected devices or engaging in any activity related to several of his businesses, through which he allegedly provided others with the means to engage in anonymized financial services, which facilitated fraud and other criminal activities.

On June 5, 2023, Scanlon had his initial appearance virtually before the Hon. Michael A. Hammer, U.S.M.J., and was released on home detention with electronic monitoring and the following conditions: (1) travel restricted to Florida and New Jersey, unless otherwise approved by Pretrial Services; (2) no contact with victims, witnesses, or clients and employees of Scanlon's businesses unless in the presence of counsel; (3) no employment in a money transmitting business; and (4) no engaging in financial transactions on behalf of, or through accounts associated with the money transmitting business, or conducting or directing others to engage in any financial transactions on behalf of the money transmitting business, including opening new accounts, except as permitted by the Court. ECF Nos. 10-14.

Since June 5, 2023, Scanlon's bail conditions have been modified approximately seven times, at his request, to allow for travel and other less restrictive conditions. *See* ECF Nos. 23, 28, 31, 35, 38, 47, 58. On all but one occasion, ECF No. 23, the Government consented to his modification requests. Most recently, on December 27, 2024, with the Government's consent, this Court modified Scanlon's bail conditions by: (1) removing GPS monitoring, (2) allowing Scanlon to communicate with both domestic and foreign business based entities in which Scanlon has an interest in and for the purpose of terminating that interest; and (3) removing the requirement that Scanlon needed approval to start a business, other than one involving banking or in the money transmitting industry. ECF No. 58.

B. For More Than Three Years, the Parties' Attempted to Resolve the Matter and Mutually Agreed to Enter Continuances of the Speedy Trial Clock for 15 Months.

During the investigation, beginning in 2020, both before and after Scanlon was charged by complaint, and up until approximately mid-September 2024, the Government and Scanlon's counsel (both current and former)[1] met and conferred on numerous occasions, and engaged in serious plea negotiations at Scanlon's request. For example, Scanlon's former attorney sent the Government a 74-page submission on January 29, 2024 and a supplemental letter on April 11, 2024 addressing

---

[1] Current counsel entered the case on June 25, 2024. ECF No. 41.

Scanlon's position on certain of the Government's potential charging theories. Additionally, on August 5, 2024, defense counsel requested a meeting with the Government to discuss a proposed resolution. On August 28, 2024, Defense counsel met with the Government, including with the Chief of the Criminal Division, to discuss Scanlon's proposed plea terms.  Prior to September 2024, defense counsel signed continuances acknowledging the parties' efforts to resolve the case, excluding 15 months from June 1, 2023 through September 20, 2024. ECF Nos. 5, 16, 25, 29, 33, 37, 40, and 46. Approximately 14 of those 15 months consisted of continuances agreed to by Scanlon's former attorneys. *See id.*

> C.  In September 2024, Scanlon's New Counsel Ended Plea Negotiations and Refused to Agree to any Additional Continuances.

In a further attempt to secure a resolution, in September 2024, the Government requested a meeting with Scanlon so that it could present him with the discovery and evidence in this matter. Instead of accepting the Government's invitation to review certain discovery, Scanlon ended negotiations and refused to sign any additional continuances beyond September 20, 2024, requiring the Government to present an indictment to the grand jury before the 30-day preindictment speedy trial clock ran.

> D. The Grand Jury Returned an Indictment, the Government Filed a Continuance Motion and Submitted a Proposed Complex Case Order.

Twenty-one days after the 30-day pre-indictment speedy trial clock began running, on October 11, 2024, the Grand Jury returned an Indictment charging Scanlon with the same count as charged in the Complaint: conspiracy to own or operate an unlicensed money transmitting business, contrary to 18 U.S.C. § 1960(b)(1)(B), in violation of 18 U.S.C. § 371. See ECF No. 48.[2] The 70-day speedy trial clock started the date the Indictment was made public—October 11, 2024. *See id.*

On October 21, 2024, the Government sent Defendant a proposed continuance and scheduling order. The next day, the parties met and conferred about the proposed order. During that meeting, defense counsel again advised the Government that Scanlon would not consent to further continuance orders. On October 23, 2024, defense counsel informed the Government that Scanlon did not agree to the proposed scheduling order and requested that the Government produce voluminous discovery pursuant to Federal Rule of Criminal Procedure 16 within nine days.

---

[2] The prosecution of Scanlon grew out of a related case pending before your Honor, *U.S. v. Goettsche, et al*, D.N.J. Crim. No. 18-977, in which Your Honor has entered several complex case orders.

On October 25, 2024, the Government filed a motion requesting this Court to (1) designate this matter as complex pursuant to 18 U.S.C. Section 3161 (h)(7); and (2) grant a continuance based on the complexity of this case and the anticipated time needed by the parties to adequately prepare (the "Continuance Motion"). ECF No. 49. On October 28, 2024, Scanlon filed a brief in opposition of the Continuance Motion (ECF No. 50), and on November 11, 2024 and November 22, 2024, Scanlon filed supplemental letters requesting a ruling on the Continuance Motion. ECF Nos. 52, 53. On November 25, 2024, the Government responded to those letters. ECF No. 54. The Court has not yet ruled on the Continuance Motion or the proposed complex case order.

E.  Defense Counsel Refused to Sign a Protective Order, Delaying the Government's Discovery Production.

On December 4, 2024, notwithstanding that the parties were waiting for a ruling on the Continuance Motion and proposed complex case order, the Government offered to begin producing discovery to Scanlon on the condition that he sign a protective order because the discovery contains sensitive and protected information. From December 2024 until January 2025, the Government attempted to negotiate the language of the protective order with defense counsel to no avail. Instead of continuing to negotiate with the Government on the language of the protective order, Scanlon filed the instant Motion to Dismiss the Indictment. ECF No. 61.

On January 21, 2025, having not heard from defense counsel about the protective order for more than a month, the Government emailed its proposed protective order to the Court, having accepted almost all of the edits defense counsel requested in December 2024. Ex. A. Scanlon objected to the proposed protective order, then withdrew his objection the next day. *See id.* This Court entered the protective order on January 23, 2025. ECF No. 62.  Defense counsel, however, did not send the Government a flash drive for the discovery production until February 21, 2025. The Government then sent Scanlon over 25,000 pages of discovery on March 4, 2025.

## LEGAL ARGUMENT

I.    Scanlon's Speedy Trial Act Claim Fails Because 70 Days Have Not Lapsed Due to Tolling, and the Government Requests the Court Hold a Hearing to Resolve the Contested Continuance Motion.

Scanlon claims that over seventy days have lapsed since his arraignment, therefore dismissal of the Indictment is warranted with prejudice pursuant to the Speedy Trial Act, 18 U.S.C. § 3161. Mot. at 6-25. However, the there are several scenarios that tolled the speedy trial clock. Because the 70-day clock has not lapsed, the Defendant's motion should be dismissed. Instead, this Court should schedule a

hearing on the Motion for a Continuance.

The Speedy Trial Act ("STA") provides that "the trial of a defendant. . . shall commence within 70 days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1); *see U.S. v. Zedner*, 547 U.S. 489, 497 (2006). However, if the defendant is charged by complaint, has an initial appearance before a magistrate, and is subsequently indicted on the same charge, the initial appearance is the "date the defendant has appeared before a judicial officer of the court in which such charge is pending." *U.S. v. Carrasquillo*, 667 F.2d 382, 384 (3d Cir. 1981); *see also U.S. v. Bly*, No. CR 17-378 (KM), 2019 WL 2417709, at *1 n.1 (D.N.J. 2019). In that event, the subsequent filing and making public of the indictment, and not the arraignment on the indictment, is the date that "last occurs," and the 70-day clock starts on that date. *See id.* Here, the Indictment (ECF No. 48) charged Scanlon with the same charge as the Complaint (ECF No. 1). Therefore, the 70-day clock started on October 11, 2024, the date the Indictment was made public. *See* ECF No. 48.

However, the 70-day clock has not run because periods of delay in this matter were excluded from the seventy-day calculation. The STA provides that certain delays are excluded, including delays resulting from pretrial motions and when the "ends of justice" served by the continuance outweigh the best interests of the public and the defendant in a speedy trial. 18 U.S.C. § 3161(h)(1), (h)(7)(A). The most common event that stops the STA clock under § 3161(h) is the filing and resolution of pre-trial motions. Section § 3161(h)(1)(D); s*ee U.S. v. Arbelaez*, 7 F.3d 344, 347 (3d Cir. 1993) ("Any pretrial motion, including a motion for extension of time, is a pretrial motion within the meaning of [§ 3161] and creates excludable time") (*citing U.S. v. Novak*, 715 F.2d 810, 813 (3d Cir. 1983)). *See also U.S. v. Willaman*, 437 F.3d 354, 359 (3d Cir. 2006) (concluding that the running of the 70-day clock was tolled from the date of filing of pretrial motions, until when the court decided said motions). Further, delay attributable to the disposition of a pretrial motion is excludable from the Speedy Trial clock regardless of whether it actually causes, or is expected to cause, delay in starting a trial. *U.S. v. Tinklenberg*, 563 U.S. 647, 650 (2011); *Arbelaez*, 7 F.3d at 347. For these reasons, both the Government's Motion for a Continuance and the Defendant's Motion to Dismiss, tolled the running of the 70-day clock.

The remaining question for the Court is how much time has been tolled. When a motion that tolled the 70-day clock warrants a hearing, then the court may exclude time from the date of the filing of the motion until the date of the hearing. *Henderson v. U.S.,* 476 U.S. 321, 326–27 (1986). In such cases, the entire period before the hearing is excluded from the STA calculation, regardless of whether the delay was reasonable. *Id* at 330. Moreover, the time from the filing of the motion until the hearing is held is excluded from the speedy trial calculation, even if the

hearing occurs more than 30 days after the motion was filed. *See United States v. Adams*, 36 F.4th 137, 147 n.9 (3d Cir. 2022) (quoting *United States v. Lattany*, 982 F.2d 866, 881–82 (3d Cir. 1992)).

As the Third Circuit has explained, a hearing is necessary to resolve a pretrial motion under the STA when the court determines that additional evidence or argument is required before taking the motion under advisement. *Adams*, 36 F.4th at 148. The Court in *Adams* explained what this looks like in practice:

> [I]f the district court chooses to resolve the motion without holding a hearing, the clock starts ticking a maximum of thirty days after it has "receive[d] all the papers it reasonably expects" from the parties. Alternatively, if the court determines a hearing is warranted to allow for additional evidence or argument before taking a motion under advisement, the Speedy Trial Act "exclude[s] all time between the filing of and the hearing on a motion whether that hearing was prompt or not."

*Id.* (quoting *Henderson*, 476 U.S. at 326); *see also U.S. v. Lattany*, 982 F.2d 866, 874 (3d Cir. 1992).

Because, in this case, a hearing is necessary to address the Motion for a Continuance, the Court should exclude time from the date the motion was filed on October 25, 2024, through the date of the hearing. Scanlon cannot dispute that a hearing is necessary here because the Defendant has requested a hearing.[3] There is also a clear disagreement between the parties about the need for a continuance. Since October 25, 2024, when the Government filed the motion for the continuance, Scanlon has filed a brief in opposition (ECF No. 50), four letters (ECF Nos. 52, 53, 67, 69), a motion to dismiss the indictment (ECF No. 61), and two responses in support of the motion to dismiss (ECF Nos. 63, 66), all of which address the issues of the STA and whether a continuance and complex case order is warranted. Based on these submissions, and Scanlon's requests, a hearing is warranted to allow the parties the opportunity to make additional arguments that are necessary for the Court's consideration before taking the motion under advisement. Should the Court schedule a hearing, time will be excluded from the filing of the motion on October 25, 2024, until the date of hearing, and only the 14-day period between the Indictment (October 11, 2025) and the Motion for a Continuance (October 25, 2025) will have lapsed.

---

[3] In an email to the Court dated February 5, 2025, Scanlon (through counsel) informed the Court that he was available for a conference and in an email to the Government dated February 21, 2025, asked that the Government join in this request. Further, in an email to the Court dated March 10, 2025, Scanlon reiterated his request for a conference.

However, even if the Court determines that a hearing is not warranted to decide the Government's Continuance Motion, the 70-day clock has still not run. When a motion does *not require* a hearing, the STA permits the district court to exclude 30 days from the speedy-trial clock while the motion is under advisement, "*i.e.*, 30 days from the time the court receives all the papers it reasonably expects" on the motion. *Henderson*, 476 U.S. at 321; *see also* 18 U.S.C. § 3161(h)(1)(H).

On October 28, 2024, Scanlon filed his opposition to the Government's Continuance Motion. ECF No. 50. On November 11, 2024 and November 22, 2024, Scanlon filed two additional letters concerning the continuance. ECF Nos. 52-53. On November 25, 2024, the Government responded to those letters. ECF No. 54. Therefore, this Court could reasonably conclude based on this record that the Court received all of the papers concerning the Continuance Motion on November 25, 2024. Since this Court received all of the papers regarding that motion on November 25, 2024, this Court should excuse at least 30 days from that date, and the 70-day clock would start again on December 25, 2024. Scanlon then filed a pre-trial motion – his Motion to Dismiss the Indictment – on January 17, 2025, which would have stopped the clock again until this Court decides that motion. *See* 18 U.S.C. § 3161(h)(1)(D). Thus, only the 23 days between December 25, 2024 and January 17, 2025 would have lapsed. Adding those 23 days to the 15 days which lapsed between the Indictment and Government's Continuance Motion, only 38 days total have lapsed.

Thus, no scenario here warrants dismissal because with or without a hearing, the 70-day STA clock has not run, and Scanlon's STA rights have not been violated. Since Scanlon has not satisfied his burden of proof to support a motion to dismiss the Indictment under the STA, *see U.S. v. Hamilton*, 46 F.3d 271, 275 (3d Cir. 1995), and the Government has established that there was no violation of STA, dismissal of the motion is not warranted. Moreover, because there was no violation warranting a dismissal of the Indictment (*see Zedner v. U.S.*, 547 U.S. 489, 500-01; *U.S. v. Reese*, 917 F.3d 177, 183 (3d Cir. 2019)) this Court need not consider whether a dismissal of the Indictment should be with or without prejudice.[4]

II.     There Has Been No Sixth Amendment Violation of Scanlon's Right to a Speedy Trial.

Even though fewer than 70 days have elapsed on the speedy trial clock, Scanlon nevertheless asserts that his Sixth Amendment right to a speedy trial requires dismissal of the Indictment. Mot. at 35-30. Defendant's motion should be denied.

---

[4] Nevertheless, should this Court decide the Indictment must be dismissed, the Government respectfully requests the Court schedule oral argument on the issue, at which time it will argue why any such dismissal should be without prejudice.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. Courts have concluded that "[i]t would be unusual to find the Sixth Amendment has been violated when the Speedy Trial Act has not." *U.S. v. Escalante-Melgar*, No. 16-453, 2020 WL 968091 at *18 (D.N.J. Feb. 28, 2020), quoting *U.S. v. Aldaco*, 477 F.3d 1008, 1018 (6th Cir. 2007); *see also U.S. v. Rice*, 746 F.3d 1074, 1081 (D.C. Cir. 2014); *U.S. v. Banks*, 761 F.3d 1163, 1181 n.9 (10th Cir. 2014); *U.S. v. McGhee*, 532 F.3d 733, 739 (8th Cir. 2008); *U.S. v. Bieganowski*, 313 F.3d 264, 284 (5th Cir. 2002); *U.S. v. Munoz-Amado*, 182 F.3d 57, 61 (1st Cir. 1999); *U.S. v. Davenport*, 935 F.2d 1223, 1238 (11th Cir. 1991); *U.S. v. Nance*, 666 F.2d 353, 360 (9th Cir. 1982). For the reasons discussed above, only approximately fifteen days of speedy trial time is unaccounted for (or 38 should this Court decide not to hold a hearing on the Government's Continuance Motion), therefore there has been no Speedy Trial Act violation.

A violation of a defendant's Sixth Amendment speedy trial right requires dismissal of the indictment with prejudice. *Barker v. Wingo*, 407 U.S. 514, 522 (1972); *U.S. v. Velazquez*, 749 F.3d 161, 167 (3d Cir. 2014). In determining whether there was a Sixth Amendment violation of the right to a speedy trial, courts apply the four-factor test established by the Supreme Court in *Barker*. These factors are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. 407 U.S. at 530. The *Barker* factors demonstrate that Scanlon's speedy trial rights have not been violated, and his motion to dismiss the Indictment should be denied.

### A.    The Length of Delay Does Not Warrant Dismissal Absent Substantial Prejudice.

The *first Barker* factor considers whether the delay is of a sufficient length to trigger an analysis of the remaining three factors. The length of the delay serves as a triggering mechanism in that, if the delay is not presumptively prejudicial, there is no need to examine the other factors. *See Barker*, 407 U.S. at 530. Delays of one year or more typically trigger the analysis of the remaining *Barker* factors. *Wall v. U.S.*, 258 F. Supp. 3d 437, 444 (D. Del. 2017) (citing *Doggett v. U.S.*, 505 U.S. 647, 652 n.1 (1992)).[5] For instance, in *U.S. v. Claxton*, the court deemed a delay of nineteen months did not necessarily "rise to the level of presumptively prejudicial". 766 F.3d 280, 295–97 (3d Cir. 2014)). Similarly, in *U.S. v. Molina-Garcia*, the court deemed a delay of twenty-one months between indictment and trial, while sufficient to trigger a Sixth Amendment inquiry, was significantly shorter than many other cases in which the Third Circuit and Supreme Court have identified a speedy trial

---

[5] Depending on the nature of the charges, the lower courts have generally found post accusation delay 'presumptively prejudicial' at least as it approaches one year." *Doggett v. U.S.*, 505 U.S. 647, 652 n.1 (1992).

violation. No. 2:20-cr-00288, 2022 U.S. Dist. LEXIS 104731, at *23 (E.D. Pa. June 13, 2022).

The length of delay for a Sixth Amendment speedy trial claim starts to be counted from the day of indictment or arrest, whichever occurs first. *U.S. v. Velazquez*, 749 F.3d 161, 183 (3d Cir. 2014). Here, approximately 19 months elapsed between May 25, 2023, when the Defendant was arrested, to January 17, 2025, when the Defendant filed this motion. The length of delay in this case is sufficient to warrant a Sixth Amendment inquiry, but does not suggest prejudice standing alone. *Hakeem v. Beyer*, 990 F.2d 750, 760 (3d Cir. 1993) ("[A] delay of 14 months is . . . not dispositive in and of itself, but is sufficiently lengthy to warrant an inquiry into the other facts.") (internal quotations omitted).

### B.    The Reasons For Delay Weigh Against Both Parties.

The *second Barker* factor analyzes whether the government or the defendant is more to blame for the delay. *Claxton*, 766 F.3d at 293. The Government bears the burden to justify the delay in bringing a defendant to trial. *U.S. v. Battis*, 589 F.3d 673, 680 (3d Cir. 2009) (*citing Hakeem*, 990 F.2d at 770). Delays caused by the Government due to negligence or bad faith are weighed more heavily in favor of dismissal. *See Claxton* at 295. To evaluate this factor, courts will subtract the amount of delay caused by the defendant from the delay caused by the Government. *Id.* (*citing Battis*, 589 F.3d at 680). *Barker*, as indicated by the *Battis* court, grouped possible reasons for delays into three categories as follows:

> A deliberate effort by the Government to delay the trial "in order to hamper the defense" weighs heavily against the Government. A "more neutral reason such as negligence or overcrowded courts" also weighs against the Government, though "less heavily." This is because "ultimate responsibility for such circumstances must rest with the [G]overnment," since it is the Government's duty to bring a defendant to trial. Finally, "a valid reason should serve to justify appropriate delay." By contrast, "delay caused by the defense weighs against the defendant," including "delay caused by the defendant's counsel." The Government "bears the burden to justify the delay."

*Battis*, 589 F.3d at 679–80 (*citing Barker,* 407 U.S. at 531).

Here, Scanlon's claim that the Government is to blame for the delay contradicts the history of this matter, much of which predates the involvement of Scanlon's current attorney. *See* ECF No. 41. In reality, the majority of the delay prior to September 2024 was at Scanlon's request, who sought a pre-indictment resolution.

First, of the approximately 19-month period of delay, approximately 15 months (from June 1, 2023 until September 20, 2024) consisted of mutually agreed upon continuances as the parties attempted to negotiate a resolution. Scanlon's counsel provided the Government with "millions" of documents to consider in attempts to justify a particular resolution. Additionally, the Government granted meetings at the request of defense counsel (both current and former) and reviewed and considered the numerous letters submitted on behalf of the Defendant, for the purpose of plea negotiations. Thus, this 15-month delay weighs against Scanlon, not the Government.

The remainder of the delay is justified or not attributed to the Government. For instance, approximately 34 days of the 19-month delay accounts for the time between the expiration of the last mutually agreed-upon continuance (September 21, 2024) and the Government's Motion for a Continuance (October 25, 2024). *See* ECF. Nos. 46; 49. During this time, the Government was preparing for, and presenting the case to the grand jury, and drafting the Motion for a Continuance. Thus, this delay is justified and should not weigh heavily against the Government. Moreover, the remaining approximately three months of the 19-month delay (from October 25, 2024 until January 17, 2025) consists of the time the Motion for a continuance was pending before the Court, and should therefore not weigh against the Government. *See* ECF. No. 49.

The Defendant's 15-month period of negotiating a particular preindictment resolution outweighs the Government's well-justified 34-day delay in preparing this matter for the grand jury and filing the Motion for a Continuance.

## C.   The Defendant Asserted His Right to a Speedy Trial.

The *third* factor the courts consider is the defendant's assertion of his right to a speedy trial. *Barker*, 407 U.S. at 528. The Government does not dispute that since September 2024, Scanlon has asserted his right to a speedy trial. Therefore, this factor weighs, to some extent, in Defendant's favor.

## D.   Scanlon's Articulated Prejudice is Insufficient to Support a Sixth Amendment Violation.

The *final Barker* factor is an analysis of any prejudice suffered by the defendant. Prejudice can manifest as oppressive pretrial incarceration, anxiety and concern of the accused, or impairment of the defense. *Battis*, 589 F.3d at 682 (citing *Barker*, 407 U.S. at 532). The burden of showing prejudice lies with the defendant, and mere possibility of prejudice is insufficient. *Hakeem*, 990 F.2d at 760. In *Burkett v. Fulcomer*, the Third Circuit recognized that disruptions to a defendant's employment, financial resources, and the general strain and anxiety on family and friends constitute prejudice that must be considered in determining a speedy trial

10

violation. 951 F.2d 1431, 1444 (3d Cir. 1991). However, to establish prejudice a defendant must demonstrate harm that extends beyond the inevitable consequences of a criminal case. *Hakeem* at 762. The general claims of anxiety or concern are insufficient unless the defendant can show that such anxiety extended beyond what is typical in criminal proceedings or resulted in specific psychic injury. *Id*. Moreover, this standard requires more than vague or conclusory allegations of harm. *Id*. (Fourteen and one-half months of anxiety over the outcome of the trial is not prejudices to the extent necessary to prevail on a Sixth Amendment claim). Instead, to reach the level of anxiety beyond that which "is inevitable in a criminal case," the petitioner, "must produce evidence of psychic injury." *Id*. (*quoting U.S. v. Dreyer*, 533 F.2d 112, 115–16 (3d Cir. 1976)).

Here, Scanlon lists numerous ways in which he claims he has been prejudiced from the delay in this matter (*see* Mot. at 30-33), none of which satisfy his burden.

First, Scanlon claims that he has suffered prejudice from oppressive pretrial conditions that "curtail his liberties" such as forcing him to relocate, restricting his mobility, and restricting his financial considerations. Mot. at 31. This is not an accurate description of his bail conditions. Even if it was, conditions that force a defendant to stay in the United States pending a criminal matter and restricting his ability to continue to engage financial crimes are precisely the types of prejudice typical for a criminal proceeding. Moreover, Scanlon's current bail conditions are by no means curtailing his liberties beyond what is to be expected. Scanlon has never been in custody for this matter, except for the night of his arrest, his current conditions allow him to roam freely (without GPS monitoring or any tracking services), communicate with domestic and foreign business entities and corporations, start any new business he so desires (except for one in the regulated money transmitting industry or banking), and on at least four occasions, he was permitted to travel. S*ee* ECF No. 58 and 28, 36, 39, 44. *See, e.g.*, *U.S. v. Rodriguez-Mendez*, No. 22-1422, 2023 WL 3378005, at *4 (3d Cir. May 11, 2023), *cert. denied*, 144 S. Ct. 314 (2023) (lengthy pretrial incarceration, including during COVID-19 lockdowns, "did not so prejudice Rodriguez-Mendez's Sixth Amendment rights as to warrant relief") *see also U.S. v. Dafna*, Crim. No. 19-CR-408 (MKB), 2024 WL 4424241, at *15 (E.D.N.Y. Oct. 5, 2024) (collecting cases and finding that pretrial conditions including "pretrial incarceration for only two weeks" followed by "home confinement and location monitoring" still "falls short of 'oppressive pretrial incarceration'" under *Barker*);

Second, Scanlon claims that the delay has impaired his ability to gather evidence, access witnesses, or otherwise prepare a defense. Mot. at 32. These assertions are conclusory and contradict the history of this matter. On April 20, 2023, the Defendant was charged by a 16-page detailed complaint that laid out the Government's theory, the criminal conduct, the co-conspirators, and the business entities involved in the criminal conduct. ECF No. 1. Additionally, during the investigation and up until September 2024, the Government met with defense

counsel on numerous occasions where the Government further elaborated on the charged conduct. Scanlon's claim also completely ignores the Government's September 2024 offer to present the evidence to Scanlon in a "show and tell", which was rejected. Further, the Government's post-Indictment discovery production to Scanlon—which it has begun to provide even as it waits for the Court to enter a discovery order—would have happened months earlier had Scanlon agreed to, rather than ignored, the proposed protective order and provided his flash drive sooner.

Lastly, Scanlon claims that he has suffered prejudice from anxiety resulting from the delay in this matter. Mot. at 33-34. However, he has failed to show any evidence supporting that his "anxiety extended beyond that which is inevitable in a criminal case." *Hakeem*, 990 F.2d at 762 (quoting *U.S. v. Dreyer*, 533 F.2d 112, 116 (3d Cir. 1976)). "In order to reach that level, the [defendant] must produce evidence of psychic injury." Id. (citing *Dreyer*, 533 F.2d at 115–16). Here, Scanlon has not presented any evidence concerning the alleged anxiety. Thus, his purported anxiety falls short of establishing prejudice.

For these reasons, Scanlon has not met his burden to establish prejudice. Accordingly, the fourth *Barker* factor weighs against him.

In sum, although the third factor weighs marginally in Scanlon's favor, the remaining *Barker* factors favor the Government. Thus, when balancing the four *Barker* factors, the Court should find that there was no violation of Scanlon's Sixth Amendment right to a speedy trial.

III.    Rule 48(b) of the Federal Rules of Criminal Procedure Does Not Warrant Dismissal.

Finally, Scanlon claims that dismissal pursuant to Fed. R. Crim. P. 48(b) is warranted because the Government has "intentionally delayed proceedings" and spent years seeking continuances "in order to prepare for trial."  Mot. at 33-35. This claim is meritless, a misrepresentation of the proceedings in this matter, and does not warrant a dismissal pursuant to Rule 48(b).

Rule 48(b) provides that the court has the discretion to dismiss an indictment, information, or complaint if there is unnecessary delay in bringing a defendant to trial. Fed. R. Crim. P. 48(b). Rule 48(b) "is more" than "a vehicle for enforcing a defendant's speedy trial right"; it is "a restatement of the court's inherent power to dismiss a case simply for want of prosecution." *U.S. v. Dreyer*, 533 F.2d 112, 113 n.1 (3d Cir. 1976); see *U.S. v. Goodson*, 204 F.3d 508, 513 (4th Cir. 2000) (Rule 48(b) empowers courts to "dismiss an indictment on constitutional grounds" and "for lack of prosecution where the delay is not of a constitutional magnitude."). But courts should exercise that power sparingly.

"[W]ant of prosecution" requires a showing that the charging party failed to take the steps necessary to make a case resolvable. *See Link v. Wabash* R.R., 370 U.S. 626, 627-636 (1962). And it requires a lack of reasonable explanation for that party's dilatory conduct. *See id.* at 633. For example, a district court "would be well within the powers expressly granted to it by" Rule 48(b) to dismiss an indictment even absent a Speedy Trial Act or Sixth Amendment violation "where the government had procured a continuance by deliberate misrepresentation and the delay caused by the continuance was seriously prejudicial to the defendant." *U.S. v. Carlone*, 666 F.2d 1112, 1116 (7th Cir. 1981). That is not what happened here. The delays in this case have reasonable explanations, have often been at Scanlon's request, there has been no bad faith by the Government, and Scanlon has not suffered any serious prejudice.

First, there are reasonable explanations concerning pre-indictment delay which are attributable to Scanlon. Since Scanlon's initial appearance in this matter, he has consented to eight continuance orders under 18 U.S.C. § 3161(h)(7), excluding time from June 1, 2023 until September 20, 2024. ECF Nos. 5, 16, 25, 29, 33, 37, 40, 46. These continuances were for the purpose of resolving the matter preindictment and most, if not all, were at the request of former defense attorneys. During this time, the Government was allowing Scanlon, through his former attorneys, the opportunity to provide the Government with additional information warranting the type of resolution that Scanlon was seeking through the exchange of documents and letters and in-person meetings, including with the Chief of the Criminal Division of the U.S. Attorney's Office.

Second, any post indictment delay is also justified, does not show any bad faith on the part of the Government, and is, in part, attributable to Scanlon. On October 11, 2024, approximately two weeks after the Defendant made it clear that he was no longer interested in a resolution, the Government presented an indictment to the grand jury. ECF No. 48. From that date until October 24, 2024, the Government attempted to negotiate a scheduling order with Scanlon. On October 23, 2024, counsel informed the Government that Scanlon did not agree to the proposed scheduling order and only two days later, on October 25, 2024, the Government filed the Continuance Motion. Additionally, while waiting for the Court's decision regarding the Motion, the Government attempted to negotiate a protective order with the Defendant so that the Government could begin to produce discovery. Despite the Government accepting and agreeing to the Defendant's proposed language for the order, the Defendant nonetheless refused to consent to the order, further delaying the production of discovery. It was only after the Defendant filed the Motion to Dismiss, that the Defendant finally agreed to the protective order. On January 23, 2025, the Court issued the protective order. It took Scanlon another month to provide a flash drive to the Government for his discovery production, and on March 4, 2025, the Government provided him with over 25,000 pages of discovery. Thus, the Government by no means has delayed this matter, and certainly has not done so in bad faith. Instead, any post indictment delays are

13

reasonably justified because of pending motions (including the time the Government has spent responding to this motion), and protective orders. Further, the Government has made every effort to move this case along, including producing discovery despite the pending scheduling order.

Therefore, these ongoing plea discussions and other case-related activities show that the Government has taken the steps necessary to make this case resolvable. *See Link* 370 U.S. at 627-636. As outlined above, there are reasonable explanations for any delay in this matter, Scanlon has failed to show any misrepresentation or bad faith delays on the part of the Government warranting a dismissal, and Scanlon has failed to establish any prejudice "extended beyond that which is inevitable in a criminal case." *Hakeem* 990 F.2d at 762.

## CONCLUSION

For all these reasons, there is no basis to dismiss the Indictment, whether under STA, the Sixth Amendment, Rule 48(b), or otherwise. The Government respectfully requests that the Court hold a hearing on the Government's Continuance Motion at its earliest convenience, deny Scanlon's motion to dismiss, enter a complex case order, and enter a scheduling order including a trial date.

Respectfully submitted,

JOHN GIORDANO
United States Attorney

By: *Megan N. Linares*

MEGAN LINARES
AARON WEBMAN
Assistant United States Attorneys

cc:     Michael Weinstein, Esq.

14