UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>     v.<br><br>CHRISTOPHER JAMES SCANLON,<br><br>                Defendant. | Criminal Action No. 24-CR-0682<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS FOR VIOLATION OF THE SPEEDY TRIAL ACT, SIXTH AMENDMENT AND FEDERAL RULES OF CRIMINAL PROCEDURE**

The government has investigated and prosecuted Mr. Scanlon for over five years. It has also been 193 days since the government indicted Mr. Scanlon with the case procedurally no further along than the morning after his arraignment. Mr. Scanlon has dutifully complied with all aspects of the legal process—and most importantly repeatedly and timely asserted his right to proceed speedily to trial and review of evidence. In contrast, the government has, and continues to, drag its feet in every conceivable manner instead of pursuing justice. Consistent with this approach, the government's opposition, ECF No. 70, when distilled to its basic form, seeks to delay Mr. Scanlon's day in court indefinitely. The government posits that it unilaterally stopped the Speedy Trial Act, 18 U.S.C. § 3161 *et seq*, clock by filing a contested motion for continuance in October 2024 that was never adjudicated, and that it can keep the clock frozen in perpetuity by now, 179 days after the motion was filed and long since that motion expired, requesting a date for a hearing on that motion. The government's outlandish position flies in the face of the most basic Congressional intent of the Speedy Trial Act and Constitutional protections baked into our system.

Contrary to its express obligations, the government disclaims any responsibility to advance Mr. Scanlon's case in a timely manner and views its role as the sole and exclusive arbiter of when

a federal criminal proceeding must advance. The government's view is that the Court has little to no role in moderating the pace of a proceeding nor leveling the playing field. The government represents that when and how it proceeds is solely governed by its own desired schedule, not the Defendant's rights nor the Court's referee role. Worse yet, the government goes so far as to suggest that attempts by Mr. Scanlon to assert his Speedy Trial rights should, strangely, also delay his case. Such logic defies legal and common sense. The Court should not rubber stamp the government's unsupported position and leave Mr. Scanlon in indefinite and Constitutional limbo without recourse. Mr. Scanlon has been prejudiced by the wholesale abrogation of his rights. The indictment should therefore be dismissed.

## I. The Indictment Should Be Dismissed Because Both Letter and Spirit of the Speedy Trial Act Have Been Violated.

The Speedy Trial Act is not a mechanism by which the government can delay indefinitely a defendant's access to timely trial as the government attempts here. The Speedy Trial Act is intended, as its most basic and fundamental core purpose, to protect the rights of defendants and the public interest in expeditious prosecution, by requiring a defendant's "trial to begin within 70 days of the filing of an information or indictment or the defendant's initial appearance." *Zedner v. United States*, 547 U.S. 489, 497, 501-502 (2006). The Act was designed to protect the rights of the defendant and to serve the public interest by limiting time during which a defendant remains on pretrial release or unnecessarily delaying the "deterrent effect of punishment."[1] *Id.* Neither the

---

[1] The Department of Justice's recent April 7, 2025 policy memorandum, Ending Regulation by Prosecution, (the "DAG Memo") reinforced that criminal prosecutions should be restrained where ambiguity exists, and especially where delay results in disproportionate prejudice. The Department's stated policy is to refrain from aggressive enforcement under 18 U.S.C. § 1960(b) (which is the sole basis for the conspiracy charge against Mr. Scanlon) where defendants acted in good faith, under foreign regulation, and/or amidst unsettled regulatory guidance.

government nor a defendant can "opt out" of the Act, and time cannot be excluded by "mere consent or waiver." *See id.* at 500-501.

Acknowledging that the pretrial process may involve periods of time "where there are valid reasons for greater delay in particular cases," the Act allows narrow exceptions for time which may be excluded from the 70 days. *See id.*, at 492, 497. To accommodate "limited delays for case specific needs," the Act provides specific procedures and bases to exclude time and, critically, requires that the Court make a specific advance finding that a continuance serves "the ends of justice . . . and outweigh[s] *the best interest of the public* and the defendant *in a speedy trial*." *Id.* at 499, 501 (emphasis in original) (quotation marks omitted) (quoting Section 3161(h)(8)(A)).

In essence, the government's arguments amount to an assertion that the government should be allowed to unilaterally freeze the Speedy Trial clock and "opt out" of the constraints of the statute. But the government's "scenarios" to find excludable time in an attempt to avoid dismissal are fatally flawed. First, the government argues that the Court should find that the clock was tolled because the government filed a contested "ends of justice" motion for continuance, even though that motion was never adjudicated.[2] *See* ECF No. 70 at 5-6. For time to be excluded for an ends of justice continuance, the continuance must have been granted before the Speedy Trial clock

---

[2] The government's motion asserted that a continuance was necessary "in furtherance of 'the ends of justice,'" because, according to the government, the case was complex, the government anticipated "numerous pretrial motions [would be] filed by both parties, requiring the Court's consideration" and the "voluminous discovery" would require extensive preparation time. *See* ECF No. 49 at 3-5. The government's assertions are belied by the utter lack of progress in this case. The government has offered nothing to support its assertion that the case is complex, as the April 20, 2023 Complaint and the October 11, 2024 Indictment contain the identical one-count conspiracy charge. The government's representation in the continuance motion regarding "numerous pretrial motions" has not materialized either. Since the government's continuance motion on October 25, 2024, the only pretrial motion for the Court's consideration is Mr. Scanlon's motion to dismiss. Nor has the government produced the "voluminous discovery" that almost six months ago it represented would be at issue. The government has recently produced only 25,000 pages, which can hardly be described as "voluminous."

expired and the reasons for the continuance must have been put on the record.  *See Zedner*, 547 U.S. at 506-508 (finding that continuance was not excluded from Speedy Trial clock because the court did not make an express finding that the exclusion supported the ends of justice); *United States v. Reese*, 917 F.3d 177, 179 (3d 2019) (conviction vacated for violation of speedy trial act where trial date was set, 50 days had expired on the Speedy Trial Act time limit, and the court *sua sponte* ordered a 79 day continuance because at the time the continuance was entered, the court did not make findings of fact to justify the exclusion); *United States v. Mayfield*, 361 Fed. App'x 425, 429 (3d Cir. 2010) (unpublished) (finding that "the Act requires the 'court to decide to grant a continuance before the period begins to run," and allows a court "put its reasons on the record" at a later time) (quoting *United States v. Rivera Constr. Co.*, 863 F.2d 293, 297 (3d Cir. 1988)); *United States v. Perez*, No. 2:13-cr-00057-CCC, 2014 WL 2581050, *1 (D.N.J. June 6, 2014) (unpublished) (citing *United States v. Lattany*, 982 F.2d 866, 877 (3d Cir. 1992); *United States v. Carrasquillo*, 667 F.2d 382, 386 (3d Cir. 1981)).  As the Supreme Court has made clear, "if a judge fails to make the requisite findings regarding the need for an ends-of-justice continuance, the delay resulting from the continuance must be counted, and if as a result the trial does not begin on time, the indictment or information must be dismissed." *Zedner*. 547 U.S. at 508.  That is the law of the land, something the government's opposition both overlooks and disregards.

The government's almost limitless definition of excludable time defies the intent of the Speedy Trial Act – protecting a defendant's rights and the public interest in timely adjudication – and ignores the Act's "procedural strictness." *See Zedner*, 547 U.S. at 508-509.  The government argues that it's self-serving continuance motion unilaterally stopped the clock, which remained suspended for 30 days following the submission of briefs on the motion.  ECF No. 70 at 4, 7. The government misinterprets the Act.  The Speedy Trial Act allows for excludable time for the

4

"prompt resolution" of a motion on the papers, up to a maximum of 30 days, if any time was consumed by the court in reaching its decision to dispose of the motion. *See United States v. Adams*, 36 F.4th 137, 148 (3d Cir. 2022) (holding that motions in limine are not excludable pretrial motions if they are not decided before trial because they "cannot be said to consume the court's time pretrial").

Here, the motion was not adjudicated before the clock expired and still has not been, therefore, it is improper to exclude time that was not used by the Court in its consideration. *See United States v. Tinklenberg*, 563 U.S. 647, 656 (3d Cir. 2011) (noting that the Act allows for exclusion of time "actually consumed by consideration of the pretrial motion"). The government distorts the Act even further in arguing that Mr. Scanlon should be penalized further to have additional time excluded because he took additional action after the briefs were filed. *See, e.g.*, ECF No. 70 at 4, 7 (arguing that the Court should allow an additional 30 days of excludable time between November 25, 2024 and December 25, 2024 because "Scanlon filed supplemental letters requesting a ruling on the Continuance Motion . . . [and] the government responded to those letters"). According to the government, Mr. Scanlon's decision to complain about the denial of his Constitutional and statutory right to speedy trial somehow waives the very right by stopping the clock. In any event, more than 179 days have lapsed since the continuance motion was filed, it was never adjudicated, and there was no judicial finding that the ends of justice supported a continuance, therefore, the time for which the motion has remained pending is not excludable. *Mayfield*, 361 Fed. App'x at 429; *Rivera Constr. Co.*, 863 F.2d at 297; *Perez*, 2014 WL 2581050, at *1; *Lattany*, 982 F.2d at 877; *Carrasquillo*, 667 F.2d at 386.

Nor can the government revive its continuance motion by asking suddenly for a hearing now. First, the government's request for a hearing is improperly asserted. The government did

5

not request a hearing or state any reasons why one would be needed when it filed its contested continuance motion.  *See* ECF No. 49.  Nor did it request a hearing at any point in the more than 179 days since the motion was filed.  Requesting one now, in the government's *opposition to a different motion*, is an improper vehicle for such a request.

Second, even if a hearing had been properly requested, the government does not allege any "additional evidence or argument" that would need to be presented to the Court "before taking the motion under advisement" as the government suggests.  Indeed, the Court has already had the motion for more than 179 days and has also not requested additional submissions or communicated any issues delaying its review.  The government's only "additional evidence or argument" put forth is that the parties continue to disagree as to whether a continuance was warranted.  That was true at the time the government filed its motion over five months ago and is the very nature of a contested motion.  If that were sufficient, the Court would be required to hold a hearing any time a party filed an opposition to any motion.

Importantly, the government's request for a hearing date to be set on its continuance motion would effectually suspend the Speedy Trial clock indefinitely in a case in which the defendant already has no scheduling order, let alone a trial date, in sight.  Critically, unlike the cases on which the government relies, here, there is no (and has never been) a scheduling order or discovery deadline, nor any scheduled conferences.  Similarly, no trial date has ever been set or even discussed in the matter.  *Cf. Adams*, 36 F.4th at 141-145 (defendant was arraigned on December 16, 2015 and trial was set for February 16, 2016, which was subsequently rescheduled several times because of pretrial motions and properly entered continuance orders); *United States v. Arbelaez*, 7 F.3d 344, 345-347 (3d Cir. 1993) (trial date was set and codefendant moved for a continuance of the trial, therefore, the day on which the codefendant filed the motion, which the

6

Court responded to on the same day, was excludable); *United States v. Willaman*, 437 F.3d 354, 355, 359 (3d Cir. 2006) (eight days after arraignment, defendant filed several pre-trial motions, which denied on August 18, 2004 and trial commenced 61 days later). The government's request for a hearing is no more than a thinly veiled attempt to hang on by its fingernails, avoid dismissal, and further prejudice Mr. Scanlon in suspending the clock indefinitely.

**II.     Mr. Scanlon's Sixth Amendment Rights Have Been Violated and the Indictment Should be Dismissed.**

The Sixth Amendment ensures a "fundamental right of the accused . . . in a speedy trial. *Barker v. Wingo*, 407 U.S. 514, 532 (1972). The government concedes that if Mr. Scanlon's Sixth Amendment Speedy Trial right was violated, the indictment must be dismissed with prejudice. ECF No. 70 at 8 (citing *Barker*, 407 U.S. at 522). The government also concedes, as it must, that the *Barker* four-factor test—"(1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant"—is applicable here. *See id.* Notably, even though the government used Mr. Scanlon's assertion of his speedy trial rights against him in its calculation of excludable time, the government concedes for purposes of the *Barker* factors that factor three weighs in Mr. Scanlon's favor. *Id.* at 10. Because the remaining three *Barker* factors also weigh in Mr. Scanlon's favor, (1) length of delay, (2) reason for delay, and (4) prejudice to the defendant, the Indictment should be dismissed. *See Doggett v. United States*, 505 U.S. 647, 650 (1992) (citing *Barker*, 407 U.S. at 530).

**A. The Length of Delay Weighs in Favor of Mr. Scanlon.**

It is undisputed that the purpose of the first factor, length of delay, is to determine whether the length of delay is presumptively prejudicial so that the Court should continue its analysis of the remaining factors. *See* ECF No. 70 at 8-9 (citing *United States v. Claxton*, 766 F.3d 280, 294 (3d Cir. 2014)). The government concedes that "[d]elays of one year or more typically trigger the

7

analysis of the remaining *Barker* factors" and that "the length of delay in this case is sufficient to warrant a Sixth Amendment inquiry." *Id.* at 8-9 (asserting that "approximately 19 months elapsed between May 25, 2023 when the Defendant was arrested, to January 17, 2025, when the Defendant filed this motion"). Therefore, the government's argument that "standing alone," the length of delay does not "suggest prejudice" is without import. *Id.* at 9. It is undisputed that this threshold first factor weighs in Mr. Scanlon's favor.

### B. The Reason for Delay Weighs in Favor of Mr. Scanlon.

The second *Barker* factor, the reason for delay, also weighs in Mr. Scanlon's favor. The government concedes that even a "neutral reason such as negligence or overcrowded courts also weighs against the government though 'less heavily [than a deliberate effort].'" *Id.* at 10 (quoting *Battis*, 589 F.3d at 679-80). As the government also concedes, "[t]he Government bears the burden to justify the delay in bringing a defendant to trial." *Id.* at 9 (citing *United States v. Battis*, 589 F.3d 673, 680 (3d Cir. 2009) (internal quotes omitted). There simply is no justification for the government's continual delay here and the government has offered none.

First, although the government captions its argument that "the reasons for delay weigh against both parties," it attempts to inappropriately blame Mr. Scanlon solely for the fifteen-months during which he and the government were engaging in attempts at resolution of the case. *See id.* at 10. Notably, the government does not cite any authority for its unsupported position that defendants should be penalized for "causing delay" by engaging in discussions with the government regarding resolution. The government also faults Mr. Scanlon for having "provided the Government with 'millions' of documents to consider in attempts to justify a particular resolution," *id.*, when in fact, Mr. Scanlon was dutifully responding to subpoenas and discovery requests issued by the government for years prior to his arrest. The government also does not

8

explain how occasionally meeting with defense counsel or reviewing documents during that fifteen-month period post arrest and pre-indictment prevented it from preparing for trial. Indeed, "it is the Government's duty to bring a defendant to trial," *Battis*, 589 F.3d at 679, and even under a generous reading its inaction can only be described as negligence.

Similarly, the government's arguments fall flat regarding its delay following the expiration of the final consent continuance, September 21, 2024. It has now been 213 days since that continuance expired. Twenty days after it expired, the government indicted Mr. Scanlon and two weeks later it moved for a continuance. Since that time, the government has not advanced this case in any meaningful way, nor does it argue that it has. Instead, the government argues that it was entitled to sit on its hands once the continuance motion was filed and that time "should therefore not weigh against the government." *See* ECF No. 70 at 10. That is wrong, contrary to law and the rights that the Sixth Amendment protects. This factor weighs against the Government and supports dismissal.

### C. The Prejudice to Mr. Scanlon Weighs in His Favor.

The government's argument against a finding of prejudice unjustifiably minimizes the effects that this delayed proceeding has had on Mr. Scanlon's life and liberty. Mr. Scanlon made clear in his motion for dismissal the myriad ways in which he has been and continues to be prejudiced by the delay. Rather than rebutting these arguments, the government focuses on the fact that Mr. Scanlon is not detained and has conditions of pre-trial release. But the government entirely ignores and minimizes how these conditions impact Mr. Scanlon's life and the weight of the indefinite nature of these conditions on him. The government dismissively argues that "claims of anxiety or concern are insufficient unless the defendant can show that such anxiety or concern are beyond what is typical in criminal proceedings." ECF No. 70 at 11. But this matter can hardly

9

be described as a typical criminal proceeding. The one-count Complaint was filed against Mr. Scanlon in April 2023, and a cookie cutter one count indictment was brought on October 2024. Now, two years after charges were initially brought, Mr. Scanlon still does not have a trial date or even a scheduling order to ensure that his case will proceed notwithstanding the indictment in October 2024. Mr. Scanlon remains indefinitely living under a cloud of anxiety, concern and a state of limbo. This is not a case of a defendant attempting to delay trial—Mr. Scanlon is a father of three, forced to relocate his family across continents following his arrest, which the government initiated without warning after years of Mr. Scanlon working with the government. He is the sole bread winner for his family. He is a compliant entrepreneur whose U.S. and U.K. licensed businesses were dismantled not by regulation or judgment, but by the Department's own contradictory messaging and actions. He remains unable to work in his chosen industry. Until this case is resolved, his family must continue to reside in Florida, thousands of miles from their home in the U.K. His life is disrupted, as is his wife, and children. The harm and impact to he and his family was outlined in detail in the Motion to Dismiss and the Opposition to the Government's Motion for Continuance. This is far from the mere anxiety that the government casts.

    The government's argument that Mr. Scanlon has not been hindered in his defense is also without merit. Incredulously, the government argues that Mr. Scanlon should have all he needs because he received the "16-page detailed complaint that laid out the government's theory" and during early negotiations, the government offered to show certain curated documents to Mr. Scanlon. ECF No. 70 at 11-12. But in its continuance motion the government represented that

there are "hundreds of thousands of documents" involved in this matter.[3]  ECF No. 49 at 4.  As the government acknowledges, only 25,000 documents have been produced, the majority of which does not even touch upon the core issues in the matter and are simply extraneous and there is no indication on when the remaining will be produced.  Mr. Scanlon cannot even review the full scope of evidence to be brought against him, and therefore, is also prevented from understanding any witnesses and what additional evidence he may need to prepare a defense.  For years, the government has had the ability to question witnesses and prepare evidence, dig into emails, financial documents and other correspondence while it has left Mr. Scanlon in the dark.  Because Mr. Scanlon has been, and continues to be, prejudiced, this factor also weighs in his favor.

The government's position renders the Sixth Amendment meaningless.  As all four factors weigh in Mr. Scanlon's favor, the indictment should be dismissed with prejudiced for violating the Sixth Amendment.

### III. Dismissal is Warranted Under Federal Rule of Criminal Procedure 48.

As set forth in Mr. Scanlon's motion to dismiss, the government has engaged in misconduct that necessitates dismissal with prejudice.  The government acknowledges that the Court has inherent authority to dismiss this matter under Federal Rule of Criminal Procedure 48.  ECF No. 70 at 12-13.  Dismissal is appropriate when, in cases like this, the government engaged in misconduct and there is no less severe a remedy.  *United States v. Wright,* 913 F.3d 364, 371 (3d Cir. 2019).

---

[3] The government also represented that it would "present this case for a superseding indictment to include additional charges."  ECF No 49 at 5. That has not occurred, and Mr. Scanlon cannot be expected to prepare defenses without knowing what additional charges may be brought against him.

11

68045/0001-49865777

The government's argument against dismissal under Rule 48 relies on its same shallow excuses for the excessive delays in this case. In essence, the government argues that any time Mr. Scanlon does not acquiesce to the government, Mr. Scanlon has caused a delay. *See* ECF No. 70 at 13 (faulting Mr. Scanlon for consenting to early continuances for resolution discussions and opposing further extensions when resolution reached an impasse). The government fails to address all other evidence of its intentional delay in Mr. Scanlon's motion. The government has blocked the sale of Mr. Scanlon's companies, frozen Mr. Scanlon's assets, and harassed employees with target letters. Even now, the government springs to life to request a hearing on its expired continuance motion for no purpose other than further stalling this case.[4] Moreover, as the government acknowledges "where the government had procured a continuance by deliberate misrepresentation and the delay caused by the continuance was seriously prejudicial to the defendant, the trial court could revoke the continuance retroactively as a sanction for the misconduct and a protection for the defendant." ECF No. 70 at 13 (quoting *United States v. Carlone*, 666 F.2d 1112, 1116 (7th Cir. 1981)). As previously noted, in its continuance motion the government represented that a complex case designation was needed because "hundreds of thousands of documents" were at issue, but to date has produced only 25,000, many having no connection to the actual evidence to be used at trial and central to the allegations; represented that

---

[4] On April 7, 2025, U.S. Department of Justice Deputy Attorney General Todd Blanche issued a unique and strikingly direct memorandum, the DAG Memo, to all Districts, including New Jersey. In the DAG Memo, Deputy Attorney General Blanche provided clear, unambiguous guidance that the statute underlying the Indictment, 18 U.S.C § 1960(b) should generally no longer be enforced criminally and all charges related to this technical regulatory statute should be dismissed absent criteria not applicable here. Despite its clear applicability to the Indictment here, the government has failed to respond substantively to defendant's queries regarding the continued viability of its case. Though not for this Court's current consideration, the DAG Memo takes the breath out of the current prosecution and the government's continued prosecution disregards the DAG Memo directive.

12

numerous pretrial motions would be filed, but so far has filed none; and represented that a superseding indictment was forth coming, which still has not materialized. The historical record here of government delays, missteps, and intentional slow walking the entire matter makes this case unique and ripe for a strong judicial correction.

Mr. Scanlon has been prejudiced by the government's intentional delay and the indictment should be dismissed with prejudice. *See* Fed. R. Cr. P. 48(b).

## CONCLUSION

For these reasons and the reasons stated herein, Christopher Scanlon respectfully requests that this Court grant his motion to dismiss and dismiss the indictment with prejudice.

>*/s/ Michael Weinstein*
>Michael Weinstein
>Email: mweinstein@coleschotz.com
>Telephone: (201) 525-6321
>**COLE SCHOTZ P.C.**
>Court Plaza North
>25 Main Street
>Hackensack, New Jersey 07602

## CERTIFICATE OF SERVICE

I certify that a copy of this pleading was electronically filed with the Clerk of the Court on April 22, 2025, via the Court's CM/ECF system.

>*/s/ Michael Weinstein*
>Michael Weinstein

13

68045/0001-49865777